**Marvin S. ANTELMAN, Plaintiff,**

v.

**Elma LEWIS, Alan Hoffman and Honorable Samuel Adams, Defendants.**

Civ. A. No. 79–737–K.

United States District Court,
D. Massachusetts.

Nov. 13, 1979.

Marvin S. Antelman, pro se.

Paul F. Ware, Jr., Goodwin, Procter & Hoar, Boston, Mass., for Alan Hoffman and Elma Lewis.

Terry Jean Seligmann, Asst. Atty. Gen., Boston, Mass., for Samuel Adams.

## Opinion

KEETON, District Judge.

### I.

#### Procedural Background

On April 11, 1979, plaintiff Antelman filed in this court a complaint against defendants Hoffman, Lewis, and Adams, asserting violation of "rights under the Constitution of the United States and its First, Fifth, Sixth, Seventh, Eighth, Ninth, and Fourteenth Amendments, 28 U.S.C. Sections 1331, 1343, and 1443; 42 U.S.C. Sections 1983, 1985, 1986, and 1988, the Constitution and the laws of the Commonwealth of Massachusetts, and the Common Law."

Attached to the complaint is a copy of a petition for removal filed by Antelman as defendant in a previous proceeding, *Elma Lewis v. Marvin S. Antelman*, Boston Mu-

nicipal Court # T–27755, Suffolk Superior Court # 666444, docketed in the U.S. District Court for the District of Massachusetts as CA–78–3072–MA. The petition for removal and attachments indicate that Lewis, as plaintiff in this earlier proceeding, sought a recovery in tort for defamation; obtained an attachment that, on April 29, 1975, was reduced to $25,000; received a verdict on November 16, 1978, in the amount of $62,000 plus interest; and on November 17, 1978, served by mail a motion to increase the attachment to $100,000.

The complaint in the present action alleges further that the petition for removal was filed on November 24, 1978, and that thereafter, on November 27, 1978, defendants were furnished a copy of the petition by plaintiff's counsel at a hearing at which Lewis and Hoffman (the latter acting as attorney for the former) appeared before defendant Adams (a Justice of the Superior Court of Massachusetts) and obtained an order for an attachment in the amount of $75,000.

### II.

#### Defendant Adams' Motion to Dismiss

Defendant Adams has moved to dismiss on the ground that this action is one challenging his judicial act and that he is protected by an absolute immunity in accordance with *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). On June 9, 1979, this motion was allowed by this court, no opposition having been filed. Numerous other documents having been filed in the meantime, this court, by a procedural order of July 31, 1979, set aside the order of dismissal of June 9, allowed the plaintiff time to file a memorandum of law in opposition to the motion to dismiss, and allowed the defendant Adams time to respond.

The court now addresses defendant Adams' motion to dismiss on the merits.

It is undisputed that, had the petition for removal to the United States District Court not been filed, defendant Adams, acting as a Justice of the Superior Court of the Com-

monwealth of Massachusetts, would have been protected against the present claim by an absolute immunity under precedents including *Stump v. Sparkman, supra,* and *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872). Plaintiff argues, however, that upon the filing of the petition for removal on November 24, 1978, or at least upon the furnishing of copies to the defendants, the state court lost all jurisdiction until the United States District Court entered an order remanding the case on November 28, 1978.[1] During this period, argues plaintiff, the United States District Court had exclusive jurisdiction and, on November 27, 1978, defendant Adams acted "in the clear absence of all jurisdiction."

In *Stump v. Sparkman, supra,* the Court emphasizes that "the necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him." 435 U.S. at 356, 98 S.Ct. at 1104–05. Citing *Bradley, supra,* the Court adds that "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." 435 U.S. at 356, 98 S.Ct. at 1105.

Relying upon *Berberian v. Gibney,* 514 F.2d 790 (1st Cir. 1975); *South Carolina v. Moore,* 447 F.2d 1067 (4th Cir. 1971); *Lowe v. Jacobs,* 243 F.2d 432 (5th Cir.), *cert. denied,* 355 U.S. 842, 78 S.Ct. 65, 2 L.Ed.2d 52 (1957), and *Adair Pipeline Co. v. Pipeliners Local Union,* 203 F.Supp. 434 (S.D.Tex. 1962), *aff'd,* 325 F.2d 206 (5th Cir. 1963), plaintiff argues that even a broad construction cannot salvage immunity for defendant Adams because he did not have, in the language of *Stump, supra,* "jurisdiction over the subject matter before him."

With respect to the meaning of "jurisdiction over the subject matter," the following passage from the opinion in *Bradley v. Fisher* is instructive:

A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend. Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority. But if on the other hand a judge of a criminal court, invested with general criminal jurisdiction over offences committed within a certain district, should hold a particular act to be a public offence, which is not by the law made an offence, and proceed to the arrest and trial of a party charged with such act, or should sentence a party convicted to a greater punishment than that authorized by the law upon its proper construction, no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction, or of the jurisdiction of the court held by him, for these are particulars for his judicial consideration, whenever his general jurisdiction over the subject-matter is invoked. Indeed, some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine

---

1. The order allowing the motion to remand stated: "The petition is not timely, nor is it an action proper for removal to this court."

relate to his jurisdiction, or that of the court held by him, or the manner in which the jurisdiction shall be exercised. And the same principle of exemption from liability which obtains for errors committed in the ordinary prosecution of a suit where there is jurisdiction of both subject and person, applies in cases of this kind, and for the same reasons.

80 U.S. (13 Wall.) at 351–352, 20 L.Ed. 646. The distinction that defines the scope of judicial immunity is usually explained in terms of the language of this passage, as one between "excess of jurisdiction and the clear absence of all jurisdiction over the subject matter." 2 F. Harper & F. James, Torts 1643, § 29.10 n. 26 (1956). Distinguished commentators have explained the distinction also as one recognizing

> that an officer generally has the duty and the power to determine whether he has jurisdiction—or, to emphasize it, that he has jurisdiction to determine even mistakenly that he has jurisdiction—unless the facts and the law are so clear as not to present an issue challenging "judicable inquiry."

*Id.* at 1643, and n. 27.[2] When acting within the scope of official capacity, defined in this broad way, a judge is protected by absolute immunity. *Id.* at 1644. *See* 3 K. Davis, Administrative Law Treatise 531–539, § 26.05 (1958).

▇▇▇ As a Justice of the Superior Court of the Commonwealth of Massachusetts, defendant Adams was a judge of a court of general jurisdiction. That court's subject-matter jurisdiction plainly extended to tort actions for defamation and to attachments related to such actions. Whatever the meaning of "jurisdiction" may be as used in judicial opinions concerning the effectiveness of orders entered by a state court after a petition for removal has been filed and before remand, that meaning does not determine the clearly distinguishable question whether the state court has such "jurisdiction over the subject-matter" as will support absolute immunity of the judge from an action for damages based on the state judge's orders. In relation to the immunity issue, *Stump* and *Bradley* support the conclusions, first, that defendant Adams had "jurisdiction over the subject-matter" of defamation actions and related attachments and, second, that his claim of immunity would remain valid even if his order regarding attachment were ineffective. This is not to say that a judge of a state court from which a case has been removed to federal district court will always necessarily have absolute immunity to civil liability in damages for any action he may purport to take in the case after it has been removed to federal court. It could be argued, for example, that after the timely and procedurally proper removal of a case over which a federal district court has removal jurisdiction and the denial of a motion for remand, there is a "clear absence of all jurisdiction" in the state court, since thereafter it would be clear that the case must proceed in federal court. However, when a case is removed improvidently and without jurisdiction, the effect of the removal and the provision of 28 U.S.C. § 1446(e) indicating that "the State court shall proceed no further unless and until the case is remanded" is more in the nature of a stay of proceedings in the state court than a total divesting of that court's jurisdiction. *See Wood v. DeWeese*, 305 F.Supp. 939 (W.D.Ky.1969). Accordingly, any action taken by a state court judge in the interval between removal and remand is more in the nature of an act taken in "excess of jurisdiction" than an act taken in "clear absence of all jurisdiction."

Defendant Adams' motions to dismiss will therefore be allowed.

### III.

### Motion for Summary Judgment of Defendants Hoffman and Lewis

On April 26, 1979, defendants Hoffman and Lewis filed a Motion for Summary

---

2. Footnote 27 is as follows: "See, e. g., Boskey and Braucher, Jurisdiction and Collateral Attack, 40 Colum.L.Rev. 1006 (1940)."

Judgment and for Costs and Attorneys Fees. By an order entered on June 22, 1979, this court allowed the motion for summary judgment and directed that judgment be entered for defendants Hoffman and Lewis. By a procedural order entered on July 31, 1979, the order of June 22 was set aside and plaintiff was given an opportunity to file in opposition to defendants' motion for summary judgment a memorandum of law and supporting affidavits conforming with Fed.R.Civ.P. 56(e). Defendants Hoffman and Lewis were given an opportunity to respond.

The court now addresses defendants' motion for summary judgment on the merits.

In addition to the conclusory allegations of violation of various constitutional and statutory provisions, adverted to in Part I of this opinion, plaintiff Antelman alleges against defendants Hoffman and Lewis that they acted in concert and conspiracy with defendant Adams (1) in relation to the attachment order of November 27, 1978 and (2) to deprive plaintiff of his rights and property without due process of law and to punish him, through an unlawful court hearing, for his peaceful civil rights work as a leader in the movement for minority rights, individual rights, constitutional rights, and the enforcement of federal rights in state courts, and other efforts for equality through court actions and humanitarian works. The factual basis for plaintiff's claims is summarized in Plaintiff's Objection to Defendant's Motion for Summary Judgment and for Costs and Attorneys Fees, dated May 1, 1979, and attached to the Motion to Set Aside Order for Summary Judgment, filed June 22, 1979:

. . . there is a dispute as [to] a material fact in this matter inasmuch as there is a dispute as to whether or not the [action] taken by the Defendants was properly taken in a proper court within said court's jurisdiction.

### A. Plaintiff's Claims Under Federal Law

■■ Plaintiff's only potentially viable federal cause of action is his claim under 42 U.S.C. § 1983.[3] Section 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

As a general proposition, private citizens are not state actors for purposes of the "color of law" requirement of § 1983. This includes litigants, e. g., *Taylor v. Nichols*, 558 F.2d 561 (10th Cir. 1977); *Wartman v. Branch 7, Civil Div., County Court*, 510 F.2d 130 (7th Cir. 1975), and their attorneys, e. g., *Harley v. Oliver*, 539 F.2d 1143 (8th Cir. 1976); *Hill v. McClellan*, 490 F.2d 859 (5th Cir. 1974); *Hansen v. Ahlgrimm*, 520 F.2d 768 (7th Cir. 1975); *Haldane v. Chagnon*, 345 F.2d 601 (9th Cir. 1965), in state civil proceedings. However, in certain cases of joint action with public officials, private citizens have been held to be acting under color of state law. E. g., *Kermit Construction Corp. v. Banco Credito y Ahorro Ponceno*, 547 F.2d 1 (1st Cir. 1976). Cf. *United States v. Price*, 383 U.S. 787, 794 and n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966) (18 U.S.C. § 242). Although courts in other

3. Plaintiff has articulated no basis for a claim of violation of the First, Fifth, Sixth, Seventh, Eighth, or Ninth Amendment to the United States Constitution, much less proffered any support for implying a cause of action for damages for such violation. Plaintiff's claim under 42 U.S.C. § 1985 must fail, since he has failed to allege facts showing that defendants conspired against him because of his membership in a class and that the criteria defining the class were invidious. *Harrison v. Brooks*, 519 F.2d 1358, 1360 (1st Cir. 1975). See *Griffin v. Breckinridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Without a basis for a claim under § 1985, there is no basis for a claim under 42 U.S.C. § 1986. *Hahn v. Sargent*, 523 F.2d 461 (1st Cir. 1975), cert. denied, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). Any claimed violation of the Fourteenth Amendment would fall within the coverage of the claim under 42 U.S.C. § 1983.

circuits have thought that private citizens who act jointly with public officials are not acting under color of law when the public officials with whom they act are immune from liability, e. g., *Sykes v. California*, 497 F.2d 197 (9th Cir. 1974); *Hill v. McClellan, supra* (5th Cir.); *Hansen v. Ahlgrimm, supra* (7th Cir.), the First Circuit Court of Appeals has indicated that private citizens conspiring with immune public officials are acting under color of state law. *Kermit Construction Corp. v. Banco Credito y Ahorro Ponceno, supra. But see Slotnick v. Staviskey*, 560 F.2d 31 (1st Cir. 1977), *cert. denied*, 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978).

■ Here, then, plaintiff's § 1983 claim against defendants Hoffman and Lewis is viable only if they were conspiring with defendant Adams, for only then would they have been acting under color of state law.

■■ It is now well settled that conclusory allegations of conspiracy are insufficient to state a cognizable claim. *Slotnick v. Staviskey, supra* ; *Francis-Sobel v. University of Maine*, 597 F.2d 15 (1st Cir. 1979). Even apart from the factual support required in relation to summary judgment, allegations do not pass muster as pleadings unless they at least outline the factual basis for the conclusory assertions of violation of rights. *Fisher v. Flynn*, 598 F.2d 663 (1st Cir. 1979).

■ Plaintiff has failed to meet these pleading requirements with respect to his allegations of conspiracy between the defendants. Moreover, these defects were not cured by affidavits filed by plaintiff in opposition to the Hoffman and Lewis motion for summary judgment. Neither the pleadings nor the affidavits outline a factual basis from which it could be inferred that defendants Hoffman and Lewis conspired with defendant Adams to deprive plaintiff of his civil rights. Accordingly, plaintiff has failed to state a claim against defendants Hoffman and Lewis under 42 U.S.C. § 1983.

## B. Plaintiff's Claims Under State Law

It is unclear from the pleadings and papers filed by plaintiff whether he means to be asserting pendent state law claims in this case. If he does, such claims must be in the nature of malicious prosecution of a civil proceeding or malicious abuse of process. In either event, plaintiff has failed either to allege or to support by affidavit his ability to establish the prima facie elements of the claims.

■ In Massachusetts, the tort of malicious prosecution "may be maintained for the unjustifiable initiation of a civil action." *Hubbard v. Beatty & Hyde, Inc.*, 343 Mass. 258, 261, 178 N.E.2d 485, 487 (1961). "In order to prevail in such an action, the plaintiff must establish that the original action was brought maliciously and without probable cause, and has been terminated in [his] favor . . . ." *Id.* Not only has plaintiff failed to allege these elements of a prima facie case or to support by affidavit his ability to establish them, but it is undisputed in the papers filed with the court that no material aspect of the original proceeding—neither the state libel action itself, the attachment, nor the attempt to remove to federal court—has, at this point at least, terminated in plaintiff's favor. Accordingly, plaintiff has failed to state a viable malicious prosecution claim.

■ Any malicious abuse of process claim that plaintiff may mean to assert fares no better. One noted authority describes the tort as follows:

The essential elements of abuse of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.

W. Prosser, Torts 857, § 121 (1971) (footnotes omitted). *See* 1 F. Harper and F. James, Torts 330–332, § 4.9 (1956). Massachusetts law appears to comport with this description. *E. g., Gabriel v. Borowy*, 324 Mass. 231, 236, 85 N.E.2d 435, 439 (1949) ("[t]o constitute a cause of action for this tort it must appear that the process was used to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed"); *Malone v. Belcher*, 216 Mass. 209, 211, 103 N.E. 637 (1913) ("[t]he defendant had the right, even though actuated by malicious motives, to attach the property to secure a claim which he had probable cause for believing was due to him . . . ."). The pleadings and affidavits that have been filed clearly indicate a legitimate reason for defendants' having sought the attachment: a verdict against plaintiff in the amount of $62,000 plus interest had been received eleven days before the attachment was allowed. Although plaintiff alleges in conclusory fashion in paragraph 7 of his complaint that the acts of defendants were done "to punish him for his peaceful civil rights work," he has not alleged, or supported by affidavit his ability to establish, any "definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process." Indeed, the gist of plaintiff's complaint is that the state court lacked jurisdiction to allow the attachment, not that the attachment was sought for some ulterior purpose. Accordingly, plaintiff has failed to state a viable malicious abuse of process claim.

### C. Conclusion

The motion for summary judgment will be allowed, and plaintiff's action against defendants Hoffman and Lewis will be dismissed. Plaintiff having been given clear notice in the procedural order of July 31, 1979, of the necessity of complying with Fed.R.Civ.P. 56(e), the inference is compelling that the failure of plaintiff's pleadings and affidavits to state a factual basis supporting plaintiff's claims results from an absence in fact of such a basis and not from a mere procedural deficiency. The dismissal will therefore be with prejudice.

### IV.

### Motion of Defendants Hoffman and Lewis for Costs and Attorneys Fees

By an order entered on June 22, 1979, the court acted upon the Hoffman and Lewis Motion for Summary Judgment and for Costs and Attorneys Fees, allowing the motion for summary judgment, "no opposition having been filed," and dismissing the action, the motion for costs and attorneys fees having been waived. The procedural order of July 31, 1979, set aside both the order for summary judgment and the waiver of costs and attorneys fees incorporated into that order. Thus the motion of Hoffman and Lewis for costs and attorneys fees remains for disposition.

Defendants Hoffman and Lewis argue that the Hoffman affidavit of April 24, 1979, states facts showing bad faith of plaintiff, sufficient to support the Hoffman-Lewis motion for costs and attorneys fees. Bad faith is a state of mind, however, and argumentative and conclusory as plaintiff's affidavit may be in other respects, it makes an assertion of fact about the affiant's own state of mind, admissible in evidence, in saying that the affiant acted in good faith in filing the removal petition. There is an issue of material fact bearing on the motion for costs and attorneys fees.

### V.

If defendants Hoffman and Lewis elect to file a waiver of their Motion for Costs and Attorneys Fees and file it within 30 days after the filing of this opinion, final judgment will be entered forthwith in favor of all defendants and against the plaintiff, with taxable costs only. If no such waiver is filed, a time will be set for a hearing solely on the motion for costs and attorneys fees, at which hearing the parties may present evidence in support of and in opposition to the motion.

## VI.

Other motions and contentions of the parties not dealt with in this opinion have become moot in light of the rulings explained in this opinion.