**George Leighton DAHL,
Plaintiff–Appellant,**

v.

**Gloria Dahl AKIN and Ted M. Akin,
Defendants–Appellees.**

**No. 79–1409.**

United States Court of Appeals,
Fifth Circuit.

Nov. 10, 1980.

Thomas L. Case, Louis P. Bickel, Dallas, Tex., for plaintiff–appellant.

Vial, Hamilton, Koch, Tubb, Knox & Stradley, Paul D. Schoonover, Dallas, Tex., for defendants–appellees.

Before HILL, RUBIN and ANDERSON, Circuit Judges.

JAMES C. HILL, Circuit Judge:

George L. Dahl, an elderly Texas widower, planned to remarry.[1] Dahl's daughter

---

[1] Our recitation of facts derives from the plaintiff's complaint. Since the district court dismissed pursuant to Fed.R.Civ.P. 12(b)(6), we present the plaintiff's conception of the case as

Gloria, fearing diversion of her father's estate, resolved to stop his remarriage. When filial remonstrances failed, Gloria resorted to the Texas courts. First, by means of false, ex parte representations that her father was incompetent, Gloria succeeded in having herself appointed his guardian. Tex.Prob.Code Ann. § 131(b) (Vernon 1956). Second, again by means of false, ex parte representations, Gloria persuaded the Texas Mental Illness Court to issue a writ directing that her father be institutionalized forthwith. Tex.Rev.Civ.Stat.Ann. art. 5547–27 (Vernon Supp.1980). Thus armed with less process than would be necessary to seize a refrigerator, see *North Georgia Finishing, Inc. v. Di–Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), Texas peace officers dragged Dahl from his home and deposited him with Presbyterian Hospital in Dallas.

While her father was thus incarcerated, Gloria persuaded the Probate Court to permit her, as guardian, to take over his residence. Meanwhile, in the Mental Illness Court, Gloria applied for "temporary hospitalization." Tex.Rev.Civ.Stat.Ann. art. 5547–31 (Vernon Supp.1980). To forestall a contest of that proceeding, she purported to waive, as guardian, personal notice to her father. Tex.Rev.Civ.Stat.Ann. art. 5547–33 (Vernon 1956). Fortunately for Dahl, who might otherwise be incarcerated to this day, certain of his acquaintances happened to see him being taken away and notified his attorneys. The scheme exposed, Dahl's attorneys secured both dismissal of the hospitalization proceedings and Dahl's release, following sixteen days of involuntary confinement. Approximately one month later, when a jury found that Dahl was competent, Gloria's guardianship also was dissolved.

For redress against his daughter, Dahl sought damages under 42 U.S.C.A. § 1983 (West 1974)[2] and pendent Texas forms of action. In brief, Dahl charged that Gloria and her husband had caused him to be deprived of liberty and property without due process of law. U.S.Const. amend. XIV, § 1, *construed in Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). To this was joined the familiar litany of state law torts, *i. e.*, abuse of process, false arrest, false imprisonment and malicious prosecution. On defendants' motion, the district court dismissed Dahl's complaint, Fed.R.Civ.P. 12(b)(6), on the statutory ground that defendants had not acted "under color of" state law. 42 U.S.C.A. § 1983 (West 1974). Dahl appeals.

■ In determining whether Dahl has stated a claim cognizable under § 1983, "[t]he first inquiry . . . is whether [he has alleged] . . . depri[vation] of a right 'secured by the Constitution and laws.'" *Martinez v. California*, 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980), quoting *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). There can be no question, *compare Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), but that Dahl's complaint implicates a "liberty" interest of constitutional magnitude. *See Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979). Nor have we any trouble finding alleged injury to a constitutionally significant "property" interest. *E. g., Barry v. Barchi*, 443 U.S. 55, 64 n.11, 99 S.Ct. 2642, 2649, 61 L.Ed.2d 365 (1979); *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 11–12, 98 S.Ct. 1554, 1561, 56 L.Ed.2d 30 (1978). Matters concerning the deprivation of liberty and property without

if it were true. *E.g., Miree v. DeKalb County*, 433 U.S. 25, 27 n.2, 97 S.Ct. 2490, 2492, 53 L.Ed.2d 557 (1977); *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 174–75, 86 S.Ct. 347, 348–349, 15 L.Ed.2d 247 (1965).

2. 42 U.S.C.A. § 1983 (West 1974) provides:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage,

of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

due process of law are governed by the Fourteenth Amendment and the Fourteenth Amendment protects only against state action. *Civil Rights Cases*, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883). Thus, before we can conclude that Dahl invokes rights "secured by" that amendment, we must also find an allegation that Texas was "involved in" their deprivation. *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961). *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 157, 98 S.Ct. 1729, 1734, 56 L.Ed.2d 185 (1978).

At first blush, the requisite "state action" would here seem obvious. A Texas judge ordered Dahl stripped of control over all of his property; another Texas judge directed that Dahl be taken from his home and placed in a mental institution. But while such judicial action can constitute "state action" under the Fourteenth Amendment, *see Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 178–79, 92 S.Ct. 1965, 1974, 32 L.Ed.2d 627 (1972); *Shelley v. Kraemer*, 334 U.S. 1, 20, 68 S.Ct. 836, 845, 92 L.Ed. 1161 (1948), it has never been held that all state court litigation must therefore result in dispositions that, if undertaken by state agents, would be constitutional. *See Bell v. Maryland*, 378 U.S. 226, 232, 84 S.Ct. 1814, 1818, 12 L.Ed.2d 822 (1964) (Black, J., dissenting); *Lombard v. Louisiana*, 373 U.S. 267, 274, 83 S.Ct. 1122, 1125, 10 L.Ed.2d 338 (1963) (Douglas, J., concurring). To suggest otherwise would mean the end, save for those capable of self–help, of personal freedom "to be irrational, arbitrary, capricious, [or] even unjust." *Peterson v. City of Greenville*, 373 U.S. 244, 250, 83 S.Ct. 1119, 1133, 10 L.Ed.2d 323 (1963) (Harlan, J., concurring). Precisely when, as in *Shelley*, judicial involvement in private litigation assumes constitutional dimensions is a problem that has perplexed courts and scholars for decades. *See generally* W. Lockhart, Y. Kamsar, J. Chopper, Constitutional Law 1411–17 (4th ed. 1975). This case demands no definitive answer. It is enough to hold that, whatever other judicial action may constitute "state action," *cf. Henry v. First National Bank*, 595 F.2d 291 (5th Cir. 1979),

a failure of procedural due process surely does.

It would be sufficient, to support this conclusion, merely to cite any number of Supreme Court cases that have so assumed. *See, e. g., Parham v. J.R.*, 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979); *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). We wish to emphasize, however, what is for us the essential fact that "procedure" constitutes an inherently judicial responsibility. *Cf. Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Notice, hearings, trial conduct—these are matters in respect of which courts are the principal, and often the only, state actors. *Cf. Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Although the Texas courts here purported merely to follow statutes, we think that the procedural nature of Dahl's claims sets this case apart from those in which state courts are accused merely of enforcing substantive rights. *Compare District 28, United States Mine Workers v. Wellmore Coal Corp.*, 609 F.2d 1083 (4th Cir. 1979); *Girard v. 94th Street & Fifth Avenue Corp.*, 530 F.2d 66 (2d Cir.), *cert. denied*, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976); *Hardy v. Gissendaner*, 508 F.2d 1207 (5th Cir. 1975); *McGuane v. Chenango Court, Inc.*, 431 F.2d 1189 (2d Cir. 1970), *cert. denied*, 401 U.S. 994, 91 S.Ct. 1238, 28 L.Ed.2d 532 (1971); *Brown v. Dunne*, 409 F.2d 341 (7th Cir. 1969). Contrary to the results in these cases, we find that Dahl's complaint properly alleges state deprivation of liberty and property without due process of law, freedom from which constitutes a right "secured by the Constitution and laws." 42 U.S.C.A. § 1983 (West 1974).

■ The preceding conclusion does not end our inquiry, for the same reason that the "attachment" cases, *e. g., North Georgia Finishing, Inc. v. Di–Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349

(1969), do not. Section 1983 does not reach all constitutional injuries, but only those caused by persons acting "under color of" state law. The question remains, therefore, whether appellees' conduct can be so characterized. Preliminarily, we note that the phrase–"under color of"–has acquired two distinct usages, only one of which is relevant here. Most commonly, courts have equated "under color of" state law with the concept of "state action" under the Fourteenth Amendment. *See, e. g., United States v. Price*, 383 U.S. 787, 794, n.7, 86 S.Ct. 1152, 1156, 16 L.Ed.2d 267 (1966); *Tongol v. Usery*, 601 F.2d 1091, 1097 (9th Cir. 1979); *Braden v. University of Pittsburgh*, 552 F.2d 948, 955 n.34 (3d Cir. 1977) (en banc); *Doe v. Charleston Area Medical Center, Inc.*, 529 F.2d 638, 642 n.3 (4th Cir. 1975); *Parish v. National Collegiate Athletic Association*, 506 F.2d 1028, 1031 n.6 (5th Cir. 1975); *Shirley v. State National Bank*, 493 F.2d 739, 741 (2d Cir.), *cert. denied*, 419 U.S. 1009, 95 S.Ct. 329, 42 L.Ed.2d 284 (1974). This interpretation is apposite to finding state involvement, *see Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 174 n.44, 90 S.Ct. 1598, 1617, 26 L.Ed.2d 142 (1970); *Sparks v. Duval County Ranch Co.*, 604 F.2d 976, 982–83 (5th Cir. 1979) (en banc), aff'd sub. nom. *Dennis v. Sparks*, —— U.S. ——, 101 S.Ct. 183, —— L.Ed.2d —— (1980), or state function, *see Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974); *Central Hardware Co. v. NLRB*, 407 U.S. 539, 547, 92 S.Ct. 2238, 2243, 33 L.Ed.2d 122 (1972), in ostensibly private conduct. It is clear, however, that "under color of" state law has a secondary usage, not coterminous with "state action," defining the character of the conduct proscribed. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155–56, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978); *Lavoie v. Bigwood*, 457 F.2d 7, 15 (1st Cir. 1972). It is this secondary usage, in light of the "state action" to which appellees unques-tionably caused Dahl to be subjected, that concerns us here.

Appellees are accused, in substance, of initiating lawsuits in bad faith. We may assume, arguendo, that their actions were tortious at state law. That would still be far removed from "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941). *Cf. Williams v. Kelley,* 624 F.2d 695 (5th Cir. 1980) ("the sort of abuse of government power that is necessary to raise an ordinary tort by a government official to the stature of a violation of the Constitution"). It is not enough, where the state in no way compelled appellees' actions, *cf. Peterson v. City of Greenville*, 373 U.S. 244, 250–53, 83 S.Ct. 1119, 1134–1135, 10 L.Ed.2d 323 (1963) (Harlan, J. concurring), that they acted "with knowledge of and pursuant to" Texas statutes. *Flagg Bros., supra*, 436 U.S. at 156, 98 S.Ct. at 1733, quoting *Adickes, supra*, 398 U.S. at 162 n.23, 90 S.Ct. at 1611 (Harlan, J.). "[U]nder 'color' of law means under 'pretense' of law." *Screws v. United States*, 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495 (1945) (plurality opinion), quoted in *Baldwin v. Morgan*, 251 F.2d 780, 786–87 (5th Cir. 1958). About the plaintiff, prosecution of a private lawsuit implies no "authority" or "pretense" beyond the First Amendment right of petition. *Cf. California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (1972). It follows that appellees' conduct, as alleged, was not taken "under color of" state law.[3] *See Torres v. First State Bank*, 588 F.2d 1322, 1325–27 (10th Cir. 1978); *Wartman v. County Court*, 510 F.2d 130, 134 (7th Cir. 1975); *Sykes v. California*, 497 F.2d 197, 202 n.13 (9th Cir. 1974); *Hill v. McClellan*, 490 F.2d 859,

---

**3.** Appellant argued that appellee initiated the commitment proceedings in her official capacity as state appointed guardian, and thus acted "under color of" law. Factually, it is impossible to determine whether Mrs. Akin acted as guardian or private citizen and relative when she proceeded against her father; she can claim either status. It is clear, however, that Tex.Rev.Civ.Stat.Ann. art. 5547 31 allows "any adult person" to initiate a commitment proceeding in Texas. Thus it cannot be assumed that Mrs. Akins acted in any official capacity.

860 (5th Cir. 1974) (per curiam), *overruled on other grounds, Sparks v. Duval County Ranch Co.,* 604 F.2d 976, 63 L.Ed.2d 777 (5th Cir. 1979) (en banc), aff'd sub. nom. *Dennis v. Sparks,* —— U.S. — --·, 101 S.Ct. 183 (1980); *Antelman v. Lewis,* 480 F.Supp. 180, 185 (D.Mass.1979).[4]  For this reason, the judgment must be and hereby is

AFFIRMED.

---

**4.** *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), involving provisional remedies, is not to the contrary. *Fuentes* was brought, not solely against a private state court litigant, but against the Florida Attorney General to enjoin enforcement of a statute. *Henry v. First National Bank,* 595 F.2d 291 (5th Cir. 1979), which enjoined enforcement of a private judgment, apparently is contrary both to our holding and to that in *Hill v. McClellan, supra,* 490 F.2d at 860. *Henry* is not controlling, however, for at least three reasons: First, *Henry* did not adjudicate the merits of whether a § 1983 suit would lie against private state court litigants, but merely whether there was suffi-cient merit to support a preliminary injunction. Second, *Henry* contains no discussion of whether the defendants were acting "under color of" state law, apparently confusing that requirement with the necessity for "state action." Cf. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 -56, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). Third, to the extent that it conflicts with *Hill, Henry* is simply questionable since, in this Circuit, one panel can not overrule another. *E. g., Carr v. Blazer Financial Services, Inc.,* 598 F.2d 1368, 1370 (5th Cir. 1979); *United States v. Lewis,* 475 F.2d 571, 574 (5th Cir. 1972).