**BROADWAY MANAGEMENT SERVICES LTD., Plaintiff,**

v.

**CULLINET SOFTWARE, INC., Defendant.**

**Civ. A. No. 86–0611–C.**

United States District Court,
D. Massachusetts.

Feb. 11, 1987.

Joan A. Lukey, Hale and Dorr, Boston, Mass., for plaintiff.

Arnold P. Messing, Margaret H. Marshall, Csaplar & Bok, Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Senior District Judge.

This is a civil action involving an exclusive marketing contract between plaintiff Broadway Management Services, Ltd. ("BMS") and defendant Cullinet Software, Inc. ("Cullinet"). BMS's complaint lists eight separate counts for violation of the Sherman Act, 15 U.S.C. §§ 1 and 2, and related actions sounding variously in contract and tort. Cullinet has counterclaimed with five counts. Count V of Cullinet's counterclaim is for malicious abuse of process. The matter is now before the Court on BMS's motion to dismiss Count V of Cullinet's counterclaim on the grounds that it fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

Cullinet is a Massachusetts corporation that develops, markets and provides technical support for computer software products. BMS is a Hong Kong-based corporation that distributes computer software in the Far East. In 1979 Cullinet and BMS entered into a five year contract for marketing of Cullinet's products in specific areas of the Far East. The parties later amended the contract to provide for an expiration date of April 30, 1985 and an option for BMS to renew contingent on the parties mutually agreeing upon sales goals. The parties failed to reach agreement, however, and the contract terminated. BMS's complaint alleges that Cullinet insisted, in bad faith, on unreasonable sales goals, and that Cullinet was secretly negotiating with other companies to replace BMS. Cullinet counterclaimed for malicious abuse of process.

The Supreme Judicial Court of Massachusetts recently explained in *Datacomm Interface, Inc. v. Computerworld, Inc.*, 396 Mass. 760, 489 N.E.2d 185 (1986) the elements and nature of the tort of malicious abuse of process:

> To prevail on an abuse of process claim it must appear that the process was used to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed. [citations omitted]. The essential elements of the tort are (1) "process" was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage.

*Id.* at 775–76, 489 N.E.2d 185. BMS moves to dismiss this counterclaim on the grounds that it fails to allege that BMS acted to accomplish any improper or ulterior motive as that term is defined in the case law. Cullinet contends that its counterclaim satisfies the ulterior motive element by alleging that

BMS used process for the purposes of harassing Cullinet, exacting a financial benefit to which BMS is not entitled, and causing Cullinet to expend substantial money and management time to defend against the complaint.

The essence of the tort of abuse of process is use of process as a threat or a club to coerce or extort some collateral advantage not properly involved in the proceeding. *Cohen v. Hurley,* 20 Mass.App. 439, 442, 480 N.E.2d 658 (1985). *See also* 1 F. Harper, F. James and O. Gray, *The Law of Torts* § 4.9, at 479, 481 & n. 18 (2nd ed. 1986); 3 J. Dooley, *Modern Tort Law* §§ 41.15, 41.18 (1984 rev.). In cases involving actionable abuse of process, the collateral benefits sought were well-defined and clearly outside the interests properly pursued in the proceeding. *See, e.g., Datacomm,* 396 Mass. at 775–76, 489 N.E.2d 185 (1986) (company's litigation was intentionally used as a marketing tool against competitor's trade show); *Lorusso v. Bloom,* 321 Mass. 9, 71 N.E.2d 218 (1947) (supplementary process used to collect twice on debt already paid); *Jacoby v. Spector,* 292 Mass. 366, 198 N.E. 157 (1935) (attachment of wages with malicious motive of harassing plaintiff and his employer so as to force plaintiff to contract to purchase household furniture); *Reardon v. Sadd,* 262 Mass. 345, 159 N.E. 751 (1928) (attachment of property to enforce a claim known to be groundless); *Malone v. Belcher,* 216 Mass. 209, 103 N.E. 637 (1913) (filing for attachment of real property in order to prevent the owner's sale of the property to a third party); *White v. Apsley Rubber Co.,* 181 Mass. 339, 63 N.E. 617 (1902) (maliciously procuring the arrest of plaintiff on criminal charge in order to compel him to abandon a claim of right of occupation of a certain house and actually to withdraw from its occupation); *American Velodur Metal, Inc. v. Schinabeck,* 20 Mass.App. 460, 481 N.E.2d 209 (1985) (commencing an action against wife for the purpose of coercing a favorable settlement in a divorce proceeding), *cert. denied,* —— U.S. ——, 106 S.Ct. 1204, 89 L.Ed.2d 318 (1986); *Carroll v. Gillespie,* 14 Mass.App. 12, 436 N.E.2d 431 (1982) (party initiated criminal complaints without probable cause and with intention to use the criminal process to collect a civil debt). *See also Stromberg v. Costello,* 456 F.Supp. 848 (D.Mass.1978) (party's application for a criminal complaint, maliciously, without probable cause, and for the purpose of inducing plaintiff to withdraw his civil action for amounts due would constitute an ulterior purpose).

■ In the present case, however, the interests which Cullinet argues are "ulterior motives" are naturally tied up with interests properly part of the counts in BMS's complaint. BMS seeks to "exact a benefit" because it seeks damages for the allegedly wrongful conduct involved in the termination of the contract.[1] In addition, no Massachusetts case has held that an intention to cause a party to expend substantial time and money to defend against the claims in a suit constitutes an "ulterior motive." As explained above, the cases show that "ulterior motive" is more than the intent to harass; there must be intention to use process for coercion or harassment to obtain something not properly part of the suit.

In opposing the motion to dismiss, Cullinet argues that the case of *Datacomm, supra,* is closely analogous. A brief review of the facts of that case shows the contrary to be true, however. In *Datacomm* the plaintiff filed an unfair competition complaint against its competitor and obtained a restraining order. The defendant counterclaimed for abuse of process. The trial judge referred the matter to a special master who found that the plaintiff made knowing misrepresentations in the complaint and had used the lawsuit as a marketing tool against the defendant's

---

1. A person's interest against defending groundless actions brought maliciously is protected by the ability to bring an action for tort of malicious prosecution. A party does not state a claim for abuse of process by alleging mere commencement of litigation to enforce a claim that the person commencing the litigation knows or reasonably should have known to be groundless. *Beecy v. Pucciarelli,* 387 Mass. 589, 596, 441 N.E.2d 1035 (1982).

**1504**

trade show. 396 Mass. at 775, 489 N.E.2d 185. The Supreme Judicial Court held that these findings satisfied the element of ulterior motive for the action of abuse of process. *Id.* at 776, 489 N.E.2d 185. In the present case, Cullinet has failed to allege that BMS seeks a collateral benefit even remotely related to that in *Datacomm.* The ulterior purpose in *Datacomm* clearly goes beyond mere ill will and the desire that a lawsuit pain the other side with the ordinary burdens of defending a suit.

■ Cullinet's attempt to support its position by distinguishing *Antleman v. Lewis,* 480 F.Supp. 180 (D.Mass.1979) is equally fruitless. In *Antleman,* the defendant sought an attachment of plaintiff's property, having obtained previously a judgment for $62,000. Plaintiff sued for abuse of process, alleging that the defendant was using the attachment to punish him for peaceful civil rights work. *Id.* at 187. The court dismissed the claim, noting that the pleadings and affidavits failed to indicate any definite act or threat not authorized by process and that attaching property to satisfy an outstanding judgment was clearly a legitimate purpose. Thus, as the court stated, there is no liability where a party "has done nothing more than carry out process to its authorized conclusion, even though with bad intentions." *Id.* at 186–87 (quoting W. Prosser, Torts § 121, at 857 (1971)). Similarly, in the present case, BMS has not maliciously abused process by seeking damages from Cullinet for an allegedly wrongful termination of a contract even if BMS concurrently intended Cullinet to be burdened with the ordinary costs of defending such a lawsuit. Thus, taking the allegations of the counterclaim as true, Cullinet has still failed to state a claim for malicious abuse of process, and consequently, BMS's motion to dismiss the counterclaim should be allowed.

Order accordingly.