**John William PODUSKA, Sr.,
Plaintiff, Appellant,**

v.

**James R. WARD, Defendant, Appellee.**

No. 89–1661.

United States Court of Appeals,
First Circuit.

Heard Jan. 11, 1990.
Decided Feb. 8, 1990.

855

Daniel J. Lyne with whom Kara L. Thornton and Hanify & King, Boston, Mass., were on brief, for plaintiff-appellant.

Harry L. Manion III with whom Cooley, Manion, Moore & Jones, P.C., Boston, Mass., was on brief, for defendant, appellee.

Before BREYER, ALDRICH and TORRUELLA, Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

This is an appeal by a defendant in counterclaim, hereinafter defendant, following a verdict against him, alleging, primarily, that a verdict should have been directed in his favor for lack of evidence, or, at least, the verdict should have been set aside, and a new trial ordered, because the great weight of the evidence was contra. Additionally, defendant complains of the charge, and of certain procedural steps taken as the result of jury confusion with respect to special questions. Finding no error, we affirm.

The counterclaim was based on the contention that the initial action, hereinafter the lawsuit, was an abuse of process. Defendant's position is that the fact that there was ill feeling, and doubts about the validity of the claims, is but a normal concomitant of many lawsuits. The court agreed with this, but put to the jury a special question.

> Question three: Do you find that Mr. Poduska commenced this lawsuit against Mr. Ward primarily for ulterior purposes unrelated to a legitimate dispute over Mr. Ward's purported obligation to pay additional sums for the use of the Mooney airplane?

The jury answered, "Yes."

It is undisputed that defendant was a high-powered entrepreneur, who founded two successful computer companies. Plaintiff went with him as a lower-level employee in the first, and agreed he would go with him in the second. His reneging as to that led to the lawsuit, not for breach of that agreement, but because of plaintiff's alleged breach of an oral understanding between them with respect to a Mooney airplane that defendant had bought, on plaintiff's recommendation, in the fall of 1983. Defendant was then a student pilot. Plaintiff was an experienced pilot, and was acquiring a flight instructor's certificate. It was agreed that plaintiff would have custody and use of the plane, and that he would give defendant instruction, but on some other plane at first because the Mooney was a high performance plane not best to learn on, and would provide transportation on request. What were the further terms of the agreement was subject to dispute, but it is undisputed that when, after some two years of custody, plaintiff notified defendant that he had changed his mind about taking the new job, defendant immediately terminated the agreement and instructed plaintiff to return to the plane, which he did.

In the ensuing lawsuit defendant sought damages in excess of $70,000, to include $37,424.52 in plane operating expenses and repair, much of which, allegedly unknown to defendant, had been paid by defendant's business secretary over the two years, with no suggestion of requiring reimbursement. The jury found that plaintiff owed defendant $1,105.80 in the lawsuit. It awarded him $21,822.82 on the counterclaim.

No purpose would be served in discussing the differing contentions as to the general terms of the oral custody and use understanding. While we note that plaintiff's interpretation seems extraordinarily favorable to himself, we could not possibly reject the jury's acceptance. *Freeman v. Package Machinery Co.*, 865 F.2d 1331 (1st

Cir.1988). Its finding of $1,105.80—for what has not been pointed out—cannot be inconsistent therewith. The only present issue is as to the warrantability of its affirmative answer to Question three.

Defendant's basic contention is that plaintiff "failed to introduce *any* evidence of an ulterior purpose to extort a collateral advantage." (Emphasis in original). If collateral advantage is limited to coercion or extortion, as suggested in defendant's principal case of *Broadway Management Services, Ltd. v. Cullinet Software, Inc.,* 652 F.Supp. 1501 (D.Mass.1987), defendant would have a point. He sought no tangible benefits, other than a money judgment in the suit itself. However, he did seek, on plaintiff's evidence, emotional satisfaction to himself, and injury to the plaintiff, both warrantably regardable as entirely collateral to the lawsuit.

Plaintiff testified that he changed his mind about accepting the position with defendant's new company on learning that he would be under the supervision of a man whose conduct had led to his resigning from defendant's first company. When he sought to explain this to defendant, defendant "would not listen." Rather, defendant said, "How can you explain what you have done to me? Just remember something. For everything that we do, there is a consequence." Upon shortly thereafter receiving a message to return the plane, plaintiff telephoned defendant and defendant said,

> What you've done to me proves that you're no friend of mine and no friend of this company, and I'm finding another flight instructor because I can't be seen socializing with you or doing anything with you that might be an embarrassment to me in front of the people that work for me.

Plaintiff returned the plane and five weeks later defendant telephoned and stated that he was going to sell it and that plaintiff should pay him his share of the past operating and ownership costs, and help him to make the sale. Plaintiff testified that he was so stunned that all he could say was that he would think it over.

At a later time defendant called him and plaintiff said he would not pay the money, or help with the sale. To this defendant replied, "I want to tell you about a lawsuit I am involved in. I am suing a couple of customs agents for having given Susan and me a hard time coming back into the country." Plaintiff asked him why he was doing that, to which defendant replied, "I don't expect to win, but I expect to cost them their jobs." Thereafter defendant instituted the present lawsuit.

 Concededly, the lawsuit's objective of a money recovery cannot be the basis for abuse of process, or a defendant would have a triable counterclaim, whenever he was sued, by alleging the suit was groundless, and that the plaintiff knew it. *Beecy v. Pucciarelli,* 387 Mass. 589, 595–96, 441 N.E.2d 1035 (1982). Equally, we cannot consider the fact that the pendency of the suit preyed on plaintiff's mind, and would cost him money. *Broadway Management Services, Inc.,* 652 F.Supp. at 1503. On the other hand, we do look at plaintiff's testimony that everyone in the industry knew of the suit, and that it caused plaintiff awkwardness around friends who were also friends of defendant, not in itself, but in conjunction with the clear inference that defendant brought the suit for parallel motives. As the founder of two companies, defendant was not going to be told no, no matter what the reason. "How can you explain what you've done to me?" "[You are] an embarrassment to me in front of the people that work for me." Can this be a valid ulterior or collateral purpose? Although the case law provides no precisely similar set of facts, the analogies are close. In both *Datacomm Interface, Inc. v. Computerworld, Inc.,* 396 Mass. 760, 775, 489 N.E.2d 185 (1986), and *Neuman v. Vidal,* 710 F.2d 856, 860 (D.C. Cir.1983), the courts recognized an injury to business and business reputation as an improper ulterior motive and abuse of process. Plaintiff testified to comparable damages, and defendant himself, if plaintiff be believed, impliedly acknowledged personal benefits.

Finally, we fail to see the logic of defendant's contention that his offer to submit the dispute to arbitration disproved malice. Plaintiff did not wish arbitration. Had he requested it, that would have been another matter.

There is one special matter, already mentioned: does the fact that the jury made a small award to defendant, as plaintiff in the lawsuit, preclude its finding that the suit was an abuse of process? Even under plaintiff-in-counterclaim's understanding of the custody and use agreement, some of the operating and maintenance expenses were to fall on him. He testified that he had paid them all. The exhibits contained many pages of items, and the fact that it turned out that, in some minor respects, plaintiff had failed, was not, as matter of law, inconsistent with his contention as to the overall purpose of the lawsuit. Indeed, a recovery is said not to be fatal in any event. Restatement (Second) of Torts, § 682 (1976).

■ As to defendant's request for a new trial because of the weakness of the evidence, concededly the test for this is lower than for a directed verdict, but, concededly, also, defendant must both disparage the evidence, and show an abuse of discretion. This last is well known to be difficult. *Mayo v. Schooner Capital Corp.*, 825 F.2d 566 (1st Cir.1987). In the present case the truthfulness of the two combatants is of paramount importance. We would not think of setting our two-dimensional appraisal against the court's three.

■ Next, defendant says that the court's charge, in emphasizing plaintiff's claims over his, was "argumentative." Even looking at the charge microscopically there is no merit in this. Nor need a court keep a mathematical balance. As to defendant's substantive complaints, they are conspicuously unsupported by objections. It is elementary that, in the absence of plain error, a party cannot repair this oversight by demanding a new trial. *Cf. Linn v. Andover Newton Theological School, Inc.*, 874 F.2d 1, 3 (1st Cir.1989). If there was any error, it was not of this dimension.

■ Finally, there was a problem with relation to the jury's answers to the special questions. In submitting questions to the jury the court stated that if it found any recovery at all for defendant (plaintiff in the lawsuit) on Question two, it could not award counsel fees in the counterclaim, Question four. In its answer to Question two, the jury returned a figure with a confusingly placed comma. In answer to Question four the jury recited, "$ All Legal Fee's to be payed." On the back of the questionnaire appeared "21822.81."

After examining the verdict form the court instructed the jury that the answer to Question two was unclear, and returned this question for clarification. It also stated that the answer to Question four was unacceptable, and that there must be a new answer in figures. After the jury had retired, the court reminded counsel that on the present basis legal fees were not recoverable. When the jury returned it answered Question two, "$1,105.80," and answered Question four, "$21,822.82." Over defendant's objection the court instructed the jury that in light of its answer to Question two, there could be no legal fees included in its answer to Question four, and that it was unclear whether the jury had included fees in its answer. The jury retired, and later returned with its answer to Question four unchanged. The court thereupon recorded that figure as a proper answer, and discharged the jury.

We find the court's handling of this matter precisely correct. We do not agree that it invaded the province of the jury. Rather, with appropriate instructions, it afforded the jury a timely opportunity to straighten out both apparent and possible mistakes. *Santiago–Negron v. Castro–Davila*, 865 F.2d 431, 443–44 (1st Cir.1989).

*Affirmed.*